WILLIAM BORDEN

v.

CATHARINE M. CROAK, ADMINISTRATRIX.

*Landlord and Tenant—Lease—Condition—Lien for Rent—Death of Tenant—Claim by Landlord against Estate of—Administration—Widow's Award—Term "Property"—Equitable Lien.*

1. The term property means that which is susceptible of present posses-
sion or enjoyment; that which is to be acquired is not property.

2. A condition in a lease, providing that the lessor shall have a valid and
first lien upon the property of the lessor for rent, refers to property owned
at the time of the making thereof. To reach subsequently acquired prop-
erty the instrument must identify the same; failing to do so it is void for
uncertainty.

[Opinion filed July 2, 1889.]

APPEAL from the Circuit Court of Cook County; the Hon.
JULIUS S. GRINNELL, Judge, presiding.

Messrs. WILSON & MOORE, for appellant.

The contract in the lease for a lien was a valid and binding
contract.

Mr. Borden's claim for a first lien upon the assets of this
estate is based *solely* on the contract entered into by Thomas
F. Croak in his lifetime. The contract was concise and com-
prehensive. The lessor was given " a right of distress, and
also a valid and first lien for said rent, accruing and to accrue
upon the property of the person or persons liable therefor."
It is not disputed that the lease was made; it is not disputed
that the property upon which the lien is claimed was the
property of Croak, or that he was liable for the rent; but it
is claimed that the contract is not valid, or such an one as the
parties could competently make. This question has been
before the Supreme Court in two recent cases. In the case
of Webster v. Nichols, 104 Ill. 160, a similar contract was in
question. The clause in the lease provided that the rent
should be a first lien on all the buildings placed on the
demised premises, and upon all the property of the lessee, and
the parties were endeavoring to enforce the lien by a bill in
the nature of a foreclosure. The court granted the relief, and
said, in the course of its opinion : " It seems to be the clear
result of all the authorities, that whenever the parties by their
contract intend to create a positive lien or charge, either upon
real or personal property, whether it is then *in esse* or not, it
attaches in equity as a lien or charge upon the particular
property, as soon as the assignor or contractor acquires a title

Borden v. Croak.

thereto, against the latter." And on page 179 the court said that it was competent for the parties to contract for the lien, and that the lien was valid as against the lessee and his assignee. In the case of the Illinois Starch Co. v. Ottawa Hydraulic Co., 17 N. E. Reporter, 486, the contract was the same. The rent was to be "a lien upon the said tract of land, hereby leased, and all the improvements thereon, or which may be put upon the same, which shall include machinery of every kind used upon said premises." The bill was to enforce the lien upon the buildings and machinery by a strict foreclosure of the mortgage clause, and the relief was granted. In both of these cases the exact question at issue, and decided by the court, was the validity of a contract between a lessor and lessee, for a lien for rent, upon the personal property of the lessee. That such contracts, therefore, are valid between the parties, is the well settled law of this State.

The lien given by the contract is enforceable against the representatives of Croak's estate, against his widow, and against claim creditors.

The administratrix of Croak's estate stands in his place. She is a mere volunteer, and takes the property of the deceased subject to all equities and claims that existed against it in the hands of the deceased. Webster v. Nichols, *supra*, 176; Sumner v. McKee, 89 Ill. 127–132.

In the case at bar she took the property, subject to Borden's lien, for rent due and to accrue. If Croak, in his lifetime, had sold the property to a *bona fide* purchaser, the lien would have attached to the proceeds of the sale, for he could not defeat his own contract by his own acts. Accordingly, when the court, for convenience in distribution and for the benefit of the estate, ordered a sale of the personal property, the proceeds came into the hands of the administratrix, representing, to all intents and purposes, the property sold. They were subject to the same lien. The administratrix, by her acts, could defeat it no more than her intestate.

Messrs. YOUNG & MAKEEL, for appellee.

GARNETT, P. J.   William Borden leased to Thomas F. Croak, during his lifetime, a store in Borden Block, Chicago. The written lease provided that the lessor should have a valid and first lien for the rent, accruing and to accrue, upon the property of the person or persons liable therefor, and the rent was made payable monthly, in advance. Croak died June 3, 1886, two months' rent being then due and unpaid. He was a merchant tailor, and kept upon the premises a stock of merchandise, used in his business, a large part of which was there when he died.

By agreement with the administratrix of the estate, Borden leased the premises in September following to another tenant, claiming at the time that he waived none of his rights under the original lease.   In November, 1886, he filed his claim in the Probate Court against Croak's estate, for the June and July rent (waiving his claim for all subsequent rent), and petitioned the court that the rent for those two months should be declared a first lien upon the assets in the hands of the administratrix.   The assets were not sufficient to pay the widow's award, and the contest is therefore between her and the lessor.   It is admitted that the alleged lien is based solely upon the stipulation in the lease.   The generality of the terms supposed to create the lien, can not escape notice.   No property in particular is described, nor is the locality given.   If we follow the construction contended for by appellant, a secret lien was created on all property, of every description, then owned or thereafter acquired, in any quarter of the globe, by the lessee.

It seems scarcely necessary to say that so broad a scope should not be given to the words of the lease, if it can be avoided without violence to the manifest intention of the parties.   The word "property" refers, in an abstract sense, to ownership, title, estate, right, and, in a concrete sense, to the thing itself, which is owned.   Anderson's Dictionary of Law, 835.   If no terms are used conducting the mind to future acquisitions, the word "property" refers to present ownership only.

In common acceptation "property" means that which is

susceptible of present possession or enjoyment. That which is to be acquired is not property. The means by which its acquisition is anticipated, a contract for example, may vest a present valuable right, but can not, with any regard for the properties of language, be considered as the thing to be obtained. The word is never used to indicate a mere hope, or expectation of having property. No rational man thinks he has property merely because he lives in expectation of having some. If the intention of the parties was that the security should extend to subsequently acquired property, that intention ought to have been clearly expressed. Tapfield v. Hillman, 6 Man. & Gr. 245.

We think the fair interpretation of the clause in the lease is, that it was intended to operate only on the property then owned by the lessee, and as the record fails to disclose that any of the assets (consisting of a stock in trade) which come into the hands of the administratrix, were owned by him when the lease was made, the case of appellant was not made out. Hamilton v. Rogers, 8 Md. 301. But if this conclusion is not correct there is another reason why the alleged lien can not be sustained. In any view of the matter appellant's lien is of an equitable, not of a legal character.

The property upon which appellant is asking for the enforcement of a lien must be regarded as after-acquired property, and if he can reach any property, his right to do so is subject to this limitation, the instrument creating the lien must identify the property. Bispham's Principles of Equity, 217 ; Jones on Chattel Mortgages, Sec. 172 a; Morrill v. Noyes, 58 Md. 458.

If it is not identified, it is void for uncertainty. In Tadman v. D'Epineuel, 20 Ch. D. 758, it was held that an instrument purporting to charge " all my present and future personalty " to secure an indebtedness, created a lien on the personal property owned by the debtor at the time the instrument was executed, but was inoperative as to property he afterward acquired, because of the absence of identification.

In Belding v. Reed, 3 Hurl. & Colt. 955, the deed conveyed certain specified personal property, with a general clause

added for the conveyance of all the grantor's other personal property upon or about his house, farm or premises, at Reedham or elsewhere, in the kingdom of Great Britain, and it was decided that so far as the general clause was concerned, the conveyance was a nullity. The same rule is recognized in Lazarus v. Andrade, 5 Com. Pl. Div. 318, and it is there considered a material point, in such cases, that neither the character of the property nor its whereabouts is indicated, and there is nothing to ear-mark it.

The principle of these authorities we believe to be sound and not in conflict with Webster v. Nichols, 104 Ill. 160, and Sumner v. McKee, 89 Ill. 127. The order of the Circuit Court is affirmed.

*Order affirmed.*