LINCOLN FIREPROOF WAREHOUSE COMPANY, Appellant, vs. GREUSEL and another, Respondents.

*December 5, 1928—March 5, 1929.*
*September 14—October 8, 1929.*

430

For the appellant there were briefs by *Gold & McCann* of Milwaukee, and oral argument by *Ray T. McCann.*

For the respondents there were briefs by *Fish, Marshutz & Hoffman,* attorneys, and *Irving A. Fish,* of counsel, all of Milwaukee, and oral argument by *Mr. Fish.*

The following opinion was filed March 5, 1929:

DOERFLER, J. Prior to the making of the voluntary assignment to the defendants, as trustees, for the benefit of creditors, the Home Wiring Company, as lessee under the lease referred to, was liable to the plaintiff herein as lessor, not only because the lessee was in actual possession of the leased premises, with the result that there existed privity of estate between the lessor and the lessee, but also because there existed privity of contract. When the assignment was executed and the defendants herein, as trustees, took possession of the leased property and conducted the business of the assignor thereon, the privity of estate between the plaintiff, lessor, and the Home Wiring Company as lessee, ceased, and thereafter the lessee remained liable under the lease solely by virtue of privity of contract, and the assignees, the defendants, as trustees herein, became liable by virtue of privity of estate created by such assignment. 2 Thompson, Real Property, p. 498. The defendants, as trustees, after the assignment, paid rent in accordance with the terms of the lease to the lessor, the plaintiff, and thereby, up to the time of the alleged breach, discharged the obligations in-

curred under the assignment which arose pursuant to the privity of estate. The plaintiff could have pursued either the original lessee or the assignees, or both at the same time, although it would be entitled only to a single satisfaction. As is said in 2 Thompson, Real Property, p. 499:

"After an assignment of the lease the lessor has a double and several security for the payment of his rent, either or both of which he may pursue till satisfaction is obtained. Therefore the receipt of rent from the assignee of the lessee does not amount to a novation or release of the lessee, but is the assertion of the right which accrued to the lessor as an incident to the assignment."

It is further said in the same volume of the learned author, on page 511:

"His [the assignee's] liability is upon the covenants and arises not from any express assumption or agreement to pay it which might be contained in the written assignment, but from the privity of estate by reason of his ownership and right to enjoy the benefits of the lease."

On or about December 1, 1925, the defendants, as trustees, abandoned the leased premises. The lessee at no time had been released from its obligations under the lease to pay rent, and its responsibility by virtue of privity of contract still continued. Plaintiff took possession, as is alleged in the complaint, of the abandoned premises as agent for the defendants, basing its right so to do upon paragraph 4 of the lease, above quoted. Such position so assumed on the part of the plaintiff can only be justified upon the theory that the provisions of paragraph 4 of the lease contain covenants which run with the land, for it is well settled that an assignee of a leasehold interest, under circumstances like those existing in the instant case, can only be held to the performance of such covenants contained in the instrument as run with the land during the period while privity of estate exists. See 2 Thompson, Real Property,

pp. 281, 282, 288; also, 35 Corp. Jur. p. 996; *H. H. Camp Co. v. Pabst B. Co.* 172 Wis. 211, 178 N. W. 474 (dissenting opinion).

In 1 Underhill on Landlord and Tenant, p. 614, § 387, it is said:

"Covenants are classified into real covenants and personal covenants. Real covenants are those which are annexed to the estate and which are incidents of its ownership and enjoyment irrespective of the fact that the original parties to the covenant are no longer in possession thereof. Such covenants are usually to be performed upon the land and are therefore said to run with the land. A personal covenant is one which, in the absence of express language making it obligatory upon the assignees or grantees of the parties, binds only those persons who are parties to it."

This definition from Underhill, when applied to the case at bar upon the covenants contained in the fourth paragraph of the lease, requires an affirmance of the orders of the lower court. Such paragraph not only fails to name the assignee, but it is lacking entirely in any reference whatsoever to an assignment. It is universally conceded that the covenant to pay rent is one which runs with the land, and an assignee of a leasehold interest under an assignment by the lessee becomes liable for rent because he either has the use and enjoyment of the land while possessing the same, or has the right to the possession of the land and to its enjoyment. The mere abandonment of the premises on the part of the assignee does not relieve him from his obligation to pay rent, for he can only relieve himself from this obligation by a surrender of the premises or by an assignment of the leasehold interest, either to the landlord, the lessee, or to a third party. This is conceded by the parties hereto.

The case of *Mann v. Ferdinand Munch Brewery,* 225 N. Y. 189, 121 N. E. 746, involved a covenant very similar

to the one contained in the fourth paragraph of the lease herein. The issue involved in that case, and which was determined by the court, consisted of whether the assignee for a valuable consideration assumed such covenant, and it was there held that it did. The provision in the *Mann Case* read as follows:

"If the tenant is dispossessed by the issuance of service of any warrant or final order in summary proceedings, or if he abandon the premises, he shall nevertheless continue liable for the payment of the rent and the performance of all the other conditions herein contained. The tenant shall not be relieved from liability for payment of rent by any assignment which may be made of this lease, whether with or without the consent of the landlord, but each and every assignee and assignor of this lease shall continue to remain liable for the payment of the rent and the performance of all the covenants and conditions herein contained until the expiration of the entire term thereof."

In its opinion the court held:

"We do not say that the Ferdinand Munch Brewery [the assignee], by accepting the assignment and nothing more, would be bound by the covenant and agreement of the lease above quoted. The rule is that the liability of an assignee grows out of the privity of estate, and that only. It ceases when that privity ceases to exist, and each successive assignee is liable only for such breaches of covenant as occur while there is privity of estate between him and the lessor. . . . When the privity of estate is broken by reassignment of the lease or surrender of possession, the liability of the assignee on the covenant is at an end. . . . The assignee is only bound by the covenants so long as he retains possession."

In the instant case the defendants, as assignees, abandoned the premises, and upon such abandonment the plaintiff was authorized to take and repossess the same. It is true that the defendants as assignees, when they abandoned the premises, did not offer a surrender of the same either to the

lessee or to the plaintiff, and had matters been permitted to remain in the situation in which they were in at the time of the abandonment, no question could be raised but that the defendants as assignees, still having a right to possession, would continue liable for the rent of the premises. When, however, the premises were abandoned, the plaintiff was authorized in law to repossess itself of the same, in which event the privity of estate existing between the plaintiff and the defendants as assignees would have ceased, with the result of relieving them from further liability for rent. On the other hand, the plaintiff had the right, upon the abandonment of the premises, under the fourth paragraph of the lease, to take possession of the same and to advertise and relet the same for and in behalf of the lessee. Here it must be borne in mind that during the entire period from the time of the execution of the lease, nothing had transpired between any of the parties to the same which would have the result of relieving the lessee of its contract obligation to pay rent, and no such claim herein is made. Therefore, when the plaintiff repossessed itself of the premises under the provisions of paragraph 4 of the lease, it elected to hold the lessee liable under the express provisions of such paragraph, pursuant to its contract liability. No contract liability ever existed between the plaintiff and the defendant assignees, the relationship of these parties having arisen merely under privity of estate. When, therefore, the plaintiff elected to and did retake possession of the premises under said fourth paragraph of the lease, and advertised the same for rent for the benefit of the lessee, it forever barred the assignees from the right of possession of such premises, so that they had neither the possession nor the right of possession, nor the enjoyment nor right of enjoyment of the same.

*By the Court.*—The orders of the lower court are affirmed,

A motion for a rehearing was granted on April 30, 1929, and the cause was reargued on September 14, 1929.

For the appellant there was a brief by *Miller, Mack & Fairchild,* and oral argument by *J. G. Hardgrove,* all of Milwaukee.

For the respondent there was a brief by *Fish, Marshutz & Hoffman,* attorneys, and *Irving A. Fish* and *W. H. Voss,* of counsel, all of Milwaukee, and oral argument by *Mr. Fish.*

The following opinion was filed October 8, 1929:

STEVENS, J. (*On reargument.*) The former opinion filed in this case bears evidence of the careful study that was given the case by the court, the result of which study was so clearly expressed by the able jurist who then spoke for the court. In rendering its decision the court was aided by very able briefs submitted when the case was first argued, as well as the briefs later submitted in response to the request of the court.

Reargument was ordered because it was asserted that the rule adopted in *Selts Investment Co. v. Promoters, etc.* 197 Wis. 476, 485, 220 N. W. 222, 222 N. W. 812, and *Strauss v. Turck,* 197 Wis. 586, 222 N. W. 811, required a reconsideration of the decision in this case. That assertion was based on the fact that those cases declared it to be the duty of the landlord to take possession of the premises abandoned by the tenant and to use reasonable diligence to relet the same in order to minimize damages, while the former decision in this case held that, by resuming possession in order to perform his duty to the tenant, the landlord accepted surrender of the premises by the assignees, thereby releasing them from further liability to pay rent.

Mature consideration leads the court to the conclusion that this result presents no ground for a modification of the former decision. While the assignees were in privity

of estate they were under obligation to pay the rent reserved in the lease. The original lessee was also liable because he contracted to pay to the end of the term. The assignees made no such contract. Their liability ended when their privity of estate was terminated.

Appellant bases its position on the unsound proposition of law that privity of estate between the landlord and the assignees continued after the assignees had tendered possession by abandoning the premises and such tender had been accepted by the landlord taking possession. Such course of conduct constitutes a surrender of all the estate or interest which the assignees had in the leasehold "by act or operation of law" as that phrase is used in sec. 240.06 of the Statutes. *Burnham v. O'Grady,* 90 Wis. 461, 463, 63 N. W. 1049.

Had the assignees contracted to pay the rent they would not have been released by the re-entry of the landlord, provided that he by notice or other proper means made plain the fact that he entered for the purpose of performing his duty to mitigate damages, rather than to terminate rights under the lease. But where there is no privity of contract on the part of the assignees, the landlord cannot create such liability by giving notice, as he did in this case, that he is taking possession for the single purpose of mitigating damages.

The rule that the landlord owes the duty to mitigate damages is not a new or novel proposition of law. This rule has long been applied to other contracts and no reason appears why it should not be applied to the particular form of contract that is included in leases of real estate, as it was applied in *Poposkey v. Munkwitz,* 68 Wis. 322, 331, 32 N. W. 35, where, in determining the measure of the damages sustained because of a breach of a lease, this court said: "Another rule having its foundation in natural jus-

tice should here be stated. In any case of a breach of contract the party injured should use reasonable diligence and make all reasonable effort to reduce to a minimum the damages resulting from such breach."

The landlord made his contract with a tenant of his own selection. That tenant remains liable upon his contract to the end of the term. The assignees never entered into any contract to pay rent to the landlord. They were obligated to pay as long as there was privity of estate between them and the landlord. When they vacated the premises they left the landlord with all the rights against his tenant which he would have possessed if they had never occupied the premises. They had given the landlord the advantage of having the rent paid for some months after the tenant was in financial difficulties. The court cannot see that the rule of the former decision works any injustice to the landlord.

The case has been considered as if it involved the rights of ordinary assignees. The court has not determined whether assignees to whom property is voluntarily transferred for the purpose of liquidating the financial affairs of the tenant come within the rule of *Liquidation of Citizens S. & T. Co.* 171 Wis. 601, 605, 177 N. W. 905.

The opinion heretofore written for the court by Mr. Justice DOERFLER, together with the mandate entered March 5, 1929, stand as the opinion and mandate of the court.

*By the Court.*—So ordered.