**Harvey Lawrence BURKETT, Plaintiff-Appellant,**

v.

**SHELL OIL COMPANY, Defendant-Appellee.**

No. 72-1065.

United States Court of Appeals, Fifth Circuit.

Nov. 26, 1973.

William H. Saliba, Mobile, Ala., Steven R. Plotkin, New Orleans, La., for plaintiff-appellant.

William Simon, Michael W. Graney, Washington, D. C., G. Sage Lyons, Samuel W. Pipes, III, Mobile, Ala., for defendant-appellee.

Before COLEMAN and GODBOLD, Circuit Judges, and GORDON, District Judge.

JACK M. GORDON, District Judge:

This appeal provides a clear illustration of how relatively simple legal issues easily can be mistaken for complexities of the first magnitude through a befuddled presentation of the facts. In this matter plaintiff-appellant contests the district court's ruling that denied plaintiff's request to reargue two motions previously decided by the district court. Appellee has filed a motion to dismiss the appeal, which, pursuant to this Court's order, has been carried concurrently with the case.

Upon completing a prerequisite judicial autopsy on the chronological development of proceedings in this action, we grant appellee's motion to dismiss the present appeal. Furthermore, the product of such a detailed review supports the district court judgment denying plaintiff the right to reargue his motions.

Once a concise statement of facts is related, the procedural Gordian knots practically unravel themselves. Hence, the importance of the factual circumstances in this action dictates an in-depth examination of the sundry transactions, both judicial and non-judicial, that have transpired thus far.

The action at bar stems from a private antitrust action filed by appellant, Harvey Lawrence Burkett, pursuant to 15 U.S.C. § 15, in the United States District Court for the Southern District of Alabama (Southern Division) [herein-

after referred to as district court] on December 3, 1969. In accordance with a written contract, plaintiff Burkett operated a gasoline service station in Mobile, Alabama under the auspices of defendant Shell Oil Company from February 1, 1965, until January 13, 1966. Plaintiff allegedly suffered substantial damages during the eleven-month-old contractual relationship with defendant Shell Oil Company. A claim for such damages lay dormant from January 13, 1966, until plaintiff manifested his intentions of pursuing this cause of action against Shell by filing suit on the aforementioned date, December 3, 1969. During this interim period, plaintiff filed a petition in bankruptcy on June 23, 1967, though plaintiff Burkett did not include among his assets any claims against Shell Oil Company that now constitute this lawsuit. Plaintiff was discharged in bankruptcy on February 16, 1968. Approximately twenty-two months after his discharge, Burkett initiated this present antitrust litigation.

Shortly after the filing of the complaint, Shell Oil Company filed its first motion for summary judgment (February 23, 1970) on the ground that plaintiff, having commenced sua sponte bankruptcy proceedings and having been adjudicated a bankrupt, did not have the capacity to maintain this type of action and was not the real party in interest since title to the alleged antitrust claim passed to the plaintiff's trustee in bankruptcy. Two months thereafter (April 23, 1970), Shell submitted a second motion for summary judgment on the alternative basis that plaintiff had given defendant Shell a written release of the claims in the present lawsuit. Defendant's motions for summary judgment were argued on May 18, 1970, and were taken under submission by the district court.

After another two month interval, plaintiff filed (July 27, 1970) a motion "to require joinder of person [the trustee in plaintiff's closed bankruptcy proceeding] needed for just adjudication", and, alternatively, a motion "to order

that joinder is not feasible and to order that the case proceed without the joinder of the trustee in bankruptcy as party plaintiff." The district court heard oral argument on these motions on September 4, 1970, and elected to take plaintiff's motions under submission that date. Fifteen days later, September 19, 1970, the district court granted defendant Shell's first motion for summary judgment against Burkett; the court concluded that title to the antitrust claims passed to the trustee in bankruptcy, which transfer deprived Burkett of standing to sue. No mention was made by the district court of Shell's motion for summary judgment founded on the written release or of Burkett's motion to require joinder.

On October 6, 1970, plaintiff requested that the district court issue an order substituting himself, Burkett, as plaintiff, suing for the use of William Gravey Smith, as trustee, instead of the plaintiff, Harvey Lawrence Burkett, suing individually and in his own right. The next day (October 7, 1970), plaintiff lodged his appeal from the final judgment entered against him on September 19, 1970 (hereinafter referred to as Appeal No. 71–1027). Absent written reasons, the district court on November 13, 1970, denied plaintiff's motion to substitute party plaintiff filed on October 6, 1970. Apparently prompted by the district court's denial of his motion to substitute party plaintiff in the antitrust action, plaintiff Burkett, on November 18, 1970, subsequent to the filing of the appeal in the civil action (Appeal No. 71–1027), filed in the bankruptcy court an ex parte motion for the court to reopen the bankruptcy proceeding to appoint a trustee In the Matter of Harvey Lawrence Burkett, Bankrupt (Case No. 24,976) [hereinafter referred to as In re Burkett, No. 24,976] and to allow said trustee (a) to join in the appeal; (b) to assume control over Burkett's antitrust action against Shell Oil Company; and (c) to file his consent that the antitrust suit be continued by the present plaintiff (Burkett) for the

use and benefit of the bankrupt's estate. The motion to reopen the estate was denied by the bankruptcy court on December 31, 1970. Burkett did not pursue appellate review of the bankruptcy court's denial of this motion.

Through an extension of time granted by order of the district court on November 13, 1970, the certified record on appeal (Appeal No. 71–1027) was not forwarded to the Clerk of the Court of Appeals for the Fifth Circuit until January 5, 1971. Although plaintiff had submitted to the bankruptcy court his motion for an ex parte order to reopen his estate in bankruptcy on November 18, 1970, plaintiff previously had filed (October 19, 1970) a motion with the district court handling the antitrust claim to certify the record in Burkett's bankruptcy case (In re Burkett, No. 24,976) in order that the bankruptcy proceeding of Burkett be included in the certified record on appeal (Appeal No. 71–1027); the latter motion to certify the record of bankruptcy case No. 24,976 was granted by agreement on December 4, 1970.

On or about March 24, 1971, appellant-Burkett filed his brief in Appeal No. 71–1027. The legal issues to be decided by the Court of Appeals in Appeal No. 71–1027, as suggested to the court by the appellant in his brief, were stated as follows:

 1. A. Whether the appellant has the right to prosecute this antitrust action in his own right.

 B, Whether appellant has a right to sue, in his own right, for the excess over the amount owed his creditors.

 2. Whether appellant should be allowed time to substitute the trustee as proper party plaintiff in this litigation.

 3. Whether the bankruptcy should be reopened and the bankruptcy court should be directed to claim or disclaim this cause of action and order either the trustee or the bankrupt or both to proceed with this action.

Another panel of this Court, on September 13, 1971, affirmed in a per curiam opinion the summary judgment granted by the district court in favor of Shell Oil Company (September 19, 1970) and reiterated appellant's lack of standing to sue for his alleged antitrust cause of action. Burkett v. Shell Oil Company, 448 F.2d 59 (5th Cir. 1971). By way of a footnote to its opinion, the court in Appeal No. 71–1027 noted what it felt to be several outstanding motions filed by appellant, and yet to be decided by the district court, to wit:

> Appellant's brief to this Court raises two additional issues: "whether appellant should be allowed time to substitute the trustee as proper party plaintiff in this litigation," and "whether the bankruptcy court should be directed to claim or disclaim this cause of action and order either the Trustee or the Bankrupt or both to proceed with this action." It appears from appellant's brief and the record from the district court that both of these questions are presently pending before the district court as motions. Neither issue is, therefore, properly before this Court. Burkett v. Shell Oil Co., 448 F.2d at 59, n. 1.

Appellant did not request reargument before the Court of Appeals in Appeal No. 71–1027 in accordance with Rule 40(a) of the Federal Rules of Appellate Procedure. Rather, on October 6, 1971, nearly a month after the decision in Appeal No. 71–1027, Burkett's counsel addressed to the district court a letter which contained counsel's thoughts on the meaning to be afforded the above quoted footnote. Pertinent portions of this letter read as follows:

> I have received a copy of the 5th Circuit's decision rendered in the case of Burkett vs. Shell, No. 71–1027. The decision makes reference to two motions filed by the Plaintiff which apparently were never ruled on by the Court. The 1st of these was a "Motion to Require Joinder of Person Needed for Just Adjudication" with an "Alternative Motion To Order That

Joinder is Not Feasible and Order This Case To Proceed Without Joinder of Trustee in Bankruptcy . . . . The second is a "Motion to Substitute Party Plaintiff" . . . .

. . . I respectfully ask that your Honor set the two motions for hearing; and also order a hearing held on the necessity of Harvey Burkett renewing the motion filed in case No. 24,976 in Bankruptcy . . . to determine whether reliefs (B) or (C) should be granted as asked in that motion.

The district judge treated the aforementioned correspondence as a motion to reconsider plaintiff's motions to require joinder and to substitute party plaintiff. In a minute entry dated November 26, 1971, the district court recited that it previously had ruled on these two motions, the motion for joinder prior and the motion to substitute subsequent to the time it granted defendant's motion for summary judgment. Inasmuch as the summary judgment was affirmed by the Court of Appeals (Appeal No. 71-1027) and none of the issues were remanded for further consideration, the district court concluded that plaintiff's motion to reconsider lacked merit.

On December 13, 1971, plaintiff filed a notice of appeal from the district court's order entered November 26, 1971 (hereinafter referred to as Appeal No. 72-1065). It is this appeal (Appeal No. 72-1065), presently before the Court, that we must focus our attention upon; nevertheless, it would be myopic if we were to consider this appeal (Appeal No. 72-1065) in a vacuum. Since plaintiff's appeal of the November 26, 1971, court order represents only one of the many pieces in this procedural jigsaw puzzle, the total chronological picture, from the time the original antitrust claim was filed to the latest appeal (Appeal No. 72-1065) at bar, must be examined.

In his brief to this Court (Appeal No. 72-1065) plaintiff-appellant contends that the district court never ruled on

two of his motions, viz, the motion to require joinder of person (filed July 27, 1970) and the motion to substitute the trustee as proper party plaintiff (filed October 6, 1970) prior to the November 26, 1971, order. Appellant alludes to the footnote to the opinion of the earlier panel (Appeal No. 71-1027) to advance this proposition. Appellant identifies in his brief (Appeal No. 72-1065) the issues in question. "The issues" consist of the same issue, labelled issue III, that appellant included in his earlier brief (Appeal No. 71-1027): whether the district court should order the bankruptcy proceeding reopened (filed on November 18, 1970). However, appellant's caption to the issue subdivision of his brief bears small semblance to the following textual argument, and consequently, is confusing if not somewhat misleading. Appellant employs this issue as an inappropriate springboard from which to launch his argument concerning the motion to require joinder of person, filed on July 27, 1970.

Albeit appellant selected an improper forum in which to attack the finality of the district court's ruling on the motion to require joinder of person, with the desire to achieve maximum organizational clarity amidst our section by section analysis warranted by this case, we shall review said argument by appellant at this juncture. Appellant's contention is simple—the district court never ruled on the plaintiff's motion to require joinder. To place this motion in chronological perspective, it was filed on July 27, 1970, and was received by the district court after the court had taken under submission Shell's two motions for summary judgment (May 18, 1970), but prior to the ruling that granted this latter relief (September 19, 1970). Oral argument on the motion to require joinder was heard by the district court on September 4, 1970. Hence, the district court had the benefit of studying defendant's summary judgment motions in light of appellant's motion to require joinder; we consider it more than mere happenstance that the district court

heard oral argument on appellant's motion two weeks before rendering its decision allowing summary judgment in favor of Shell. When the district court granted Shell's summary judgment motion, appellant's motion to require joinder concomitantly was decided unfavorably to the mover. Assuming in arguendo, that appellant's motion survived the district court's summary judgment (September 19, 1970), the district court's ruling on appellant's motion to substitute (filed on October 6, 1970 and decided on November 13, 1970) was determinative. In the first paragraph of appellant's motion to substitute party plaintiff, appellant suggested to the district court that at the time it entertained the summary judgment the aforementioned motion to require joinder was pending before the district court and appellant invited to the district court's attention the fact that the district court apparently had not yet acted on the earlier motion. As will be discussed below, the district court denied, in a summary but cogent fashion, the appellant's motion to substitute party plaintiff on November 13, 1970. If, for any reason, the July 27, 1970, motion to require joinder survived the district court's summary judgment in favor of defendant Shell on September 19, 1970, the district court's action on November 13, 1970, in denying appellant's motion to substitute party plaintiff, equally constituted an effective denial of the relief requested in appellant's earlier motion to require joinder, particularly in view of the fact that the appellant seemingly incorporated the thrust of his earlier motion into the text of his later motion to substitute.

It is not difficult to visualize how our predecessor panel could have become entangled in a web of confusion created principally by plaintiff's misleading and outright patently erroneous statement in his brief (Appeal No. 71–1027) that the motion to substitute was never passed upon by the district court, compounded by the fact that this motion contained critical language referring to the motion to require joinder.

■ Moreover, plaintiff chose not to file a motion to alter or amend the district court's summary judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. Lastly, the Court of Appeals (Appeal No. 71–1027) affirmed the district court's summary judgment dated September 19, 1970, absent any reservations concerning the correctitude of the district court's approach to appellant's motion to require joinder.[1]

The above cited misstatement by appellant in his brief in Appeal No. 71–1027 is not the single such instance in this case. Appellant has employed from the inception of this lawsuit, at both the trial and appellate court levels, unorthodox and misleading procedures. Regardless of whether appellant's conduct in these proceedings was the result of calculated procedural gamesmanship or was purely a product of confusion, it is evident that this type of misguidance is the prime source of the present procedural morass. An examination of the record, suitably capsulized by the appellant's own appendix, immediately reveals the fallacious character of appellant's sundry arguments. Thus, it is necessary that we digress momentarily to isolate and analyze various examples of erro-

---

1. Inasmuch as the Court of Appeals (Appeal No. 71–1027) did not remand the case to the district court in the per curiam opinion, the footnote to the per curiam opinion did not constitute a controlling appellate order. Assuming for the moment that the case had been remanded, the appellate court's footnote to the per curiam decision could not be the law of the case as to the legal issues since the substance of the footnote was clearly erroneous and adherence to it would work a manifest injustice. United States v. Habig, 474 F.2d 57 (7th Cir. 1973) ; Toucey v. New York Life Ins. Co., 112 F.2d 927 (8th Cir. 1940) cert. granted, 311 U.S. 643, 61 S.Ct. 440, 85 L.Ed. 410, aff'd, 313 U.S. 538, 61 S.Ct. 833, 85 L.Ed. 1507, vacated 313 U.S. 596, 61 S.Ct. 938, 85 L.Ed. 1549, rev'd, 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100 (1941) ; Atchison, T. & S. F. Ry. Co. v. Ballard, 108 F.2d 768, (5th Cir.), reh. denied, 109 F.2d 1012, cert. denied, 310 U.S. 646, 60 S.Ct. 1096, 84 L.Ed. 1413 (1940). Cf. Lincoln Nat'l Life Ins. Co. v. Roosth, 306 F.2d 110 (5th Cir. 1962).

neous factual allegations on the part of the appellant.

As previously stated, three major issues were raised by the appellant in the first appeal (Appeal No. 71–1027). The first issue was bifurcated. Reference to the footnote in the per curiam opinion (Appeal No. 71–1027) indicates that the panel in the first appeal resolved only the entire first issue, that is, both sub-issues, proposed by the appellant. The language in the footnote characterizing the two motions which the panel thought to have been then pending before the district court is taken verbatim from the language appellant used to describe the second and third issues in his brief.

The per curiam opinion of this Court (Appeal No. 71–1027) unconditionally affirmed the ruling of the district court —summary judgment in favor of Shell Oil Company and against Burkett, save two issues that the panel determined were not properly ripe for appellate adjudication: (1) the motion to substitute the trustee as proper party plaintiff, and (2) whether the bankruptcy should be reopened. The Court (Appeal No. 71–1027) segregated these two motions because it appeared to the Court "from appellant's brief and the record from the district court that both of these questions are presently pending before the district court as motions." This statement contained as well as produced multiple errors of fact and law. Both motions of appellant were filed subsequent to the time the district court granted defendant's motion for summary judgment on September 19, 1970, and, as an addendum to our factual timetable, it must be pointed out that rulings on the same two motions, the motion to substitute and the motion to reopen, were issued prior to the date the record on appeal (Appeal No. 71–1027) was docketed with the Clerk for the Fifth Circuit Court of Appeals, and, of course, prior to the respective per curiam opinion of September 13, 1971.

Appellant's October 6, 1970, motion to substitute represents a belated attempt to have the district court reconsider its summary judgment of September 19, 1970; under Rule 59 of the Federal Rules of Civil Procedure, a petitioner has ten days from the entry of judgment, which, in this case, made September 29, 1970, the last available date. On October 7, 1970, one day after appellant filed his motion to substitute, appellant lodged a notice of appeal from the summary judgment entered against him (Appeal No. 71–1027).

■■ Since an appeal may be taken only from a final judgment, the district court's order granting Shell's motion for summary judgment of September 19, 1970, constituted a final judgment. Federal Rules of Civil Procedure, Rules 54 and 56; 28 U.S.C. § 1291; Poss v. Lieberman, 299 F.2d 358 (2nd Cir.), cert. denied, 370 U.S. 944, 82 S.Ct. 1585, 8 L.Ed.2d 810 (1962). Once a summary judgment has been entered, no further proceedings in the action are feasible. 10 Wright & Miller, Federal Practice and Procedure § 2715, at 416.

■■ We also note that the motion to substitute, filed and decided subsequent to the summary judgment ruling of September 19, 1970, is not one of the special class of motions that can destroy the finality of the preceding summary judgment, and, without doubt, the motion to reopen, filed in an entirely different judicial proceeding (In re Burkett, Case No. 24,976), cannot disturb the finality of the summary judgment decided in favor of Shell. 9 Moore's Federal Practice, ¶ 110.08[3], at 120.

Shortly thereafter, on November 13, 1970, the district court denied appellant's motion to substitute. Although plaintiff did not file an appeal or any Rule 59 motions from the November 13, 1970, order, he included the motion to substitute in his designation of record on appeal (Appeal No. 71–1027), but failed to include the district court's order denying that motion. While the notice of appeal was filed prior to the district court's ruling on the motion to substitute, such ruling was issued almost

two months before the certified record on appeal was forwarded to the appellate court (Appeal No. 71–1027). Moreover, in his brief to the Court of Appeals (March 24, 1971), appellant summarized the trial court proceedings by stating unequivocally that the trial court never ruled on his motion to substitute, despite appellant's tacit concession in another section of the *same* brief that the trial court erroneously *decided* the motion to substitute. Of further import is the fact that appellant plainly stated in his affidavit and motion to reopen his estate in bankruptcy (Case No. 24,976) dated November 18, 1970, that his motion to substitute in the antitrust action was denied by the district court. In any event, there was not any appeal properly before this Court in Appeal No. 71–1027 regarding appellant's motion to substitute.

Once the facts are arranged in a time sequence, it becomes relatively facile to follow and comprehend the legal maneuvering that has transpired until now. At this point in time, however, plaintiff decided to change his procedural vehicle in the middle of the race, from a civil antitrust action to a bankruptcy proceeding, but plaintiff neglected to provide observers with an updated program containing the switchover, thereby making the entire event appear chaotic and almost indeterminable.

■ The issue as to whether the bankruptcy should be reopened was presented in the context of a motion, dated November 18, 1970, to the bankruptcy court in Case No. 24,976, In re Harvey Lawrence Burkett, Bankrupt. That motion was denied by the bankruptcy court on December 31, 1970. The ruling on the motion to reopen is not listed in the appellant's appendix for the antitrust claim simply because the motion to reopen the bankruptcy was made in an entirely different proceeding. Augmenting the confusion, however, appellant included this ex parte motion to reopen, filed with the bankruptcy court, in his designation of record on appeal (Appeal No. 71–1027), reciting as justi-

fication for its inclusion the fact that the bankruptcy case was relevant to a proper determination of the issues involved in the civil action appeal. Additionally, appellant apparently failed to inform the earlier panel that the bankruptcy court denied his motion to reopen on December 31, 1970, five days before the certified record was mailed to the Court of Appeals (Appeal No. 71–1027). A direct appeal on the December 31, 1970, ruling of the bankruptcy court was not executed by the plaintiff-Burkett, as permitted by the Bankruptcy Act, 11 U. S.C. § 47, nor did Burkett move for reargument. A bankruptcy proceeding cannot be collaterally attacked or reopened. Bumb v. Valley Electric Co., 419 F.2d 107 (9th Cir. 1969).

The per curiam opinion (Appeal No. 71–1027) was issued September 13, 1971. Appellant elected not to seek a rehearing, nor did appellant, in any manner, invite to the attention of the Court of Appeals the fact that it had mistakenly assumed that certain issues enumerated in the footnote to its opinion still were pending on motion before the district court. Instead, appellant waited until after the fourteen day time period in which to file a petition for rehearing pursuant to Rule 40 of the Federal Rules of Appellate Procedure had expired, and then, on October 6, 1971, appellant mailed a letter to the district court that further compounded the confusion.

The first paragraph of appellant's letter to the district court purported to outline the holding of the per curiam opinion (Appeal No. 71–1027). Appellant indicated to the district judge that the Court of Appeals, in a footnote to its decision, referred to two motions that were never decided by the district court. More specifically, appellant identified those motions as (1) the motion to require joinder of person (filed July 27, 1970), and (2) the motion to substitute a party plaintiff (filed on October 6, 1970), when, in fact, only the motion to substitute actually had been mentioned in the footnote to the per curiam opinion; the other motion referred to in the

footnote was, of course, the motion to reopen bankruptcy case No. 24,976, In re Burkett, Bankrupt.

In the second paragraph of the October 6, 1971, letter, appellant's counsel requested that the district judge set for hearing the two motions, that is, the motion to require joinder and the motion to substitute, and concurrently, requested that the district judge set a hearing on the necessity of bankrupt, Burkett renewing his motion to reopen filed in the bankruptcy case. This latter motion pertaining to Burkett's bankruptcy case was the second motion cited by the earlier panel in the footnote to their opinion (Appeal No. 71–1027). However, appellant did not present the motion to reopen to the district court in the context of the footnote to the per curiam opinion. Rather, plaintiff merely asked for a hearing on the necessity of renewing his motion to reopen filed in the bankruptcy proceeding. Therefore, the action of the district court in treating counsel for appellant's letter as a motion to reconsider was entirely appropriate; the soundness of the district court's approach in handling this letter is reinforced twofold: first, by the fact that the district court had ruled on all of appellant's motions, and second, by the fact that there was no remand by the Court of Appeals as a result of the prior appeal (Appeal No. 71–1027).

We might point out that an available alternative would have been for the district court to inform appellant's counsel of his erroneous observations and of the inherent mistakes in the footnote to the per curiam opinion (Appeal No. 71–1027), thereby conveying to appellant the proper status of his actions. This comment is not to indicate that the district court chose an improper approach to appellant's letter, but rather, to recognize that the mere fact that the district court selected the route of classifying appellant's letter as a motion to reconsider should not have the effect of adding greater legal dignity to plaintiff's position.

It is true that the record in the first appeal (Appeal No. 71–1027) could have revealed to the court the disposition of the motion to substitute and the motion to reopen that had occurred in the district court, notwithstanding the likelihood of a factual hiatus, especially with respect to the bankruptcy proceeding. It is understandable that the earlier panel may have relied principally on the accuracy of representations made by plaintiff in his appellate brief without delving into a detailed study of the intricate record. Nevertheless, the panel in the original per curiam decision (Appeal No. 71–1027) essentially was correct in its statement in the last sentence in the footnote that the motion to substitute and the motion to reopen were not properly before the Court of Appeals, although the panel was mistaken in its belief that these issues were then pending before the district court.

Now that we have forged a path, as clear as we possibly can, through this labyrinth of facts and procedure, it readily is evident, after the journey, that appellant has been soiled, if not muddied, by his practice of guiding the courts astray through the employment of misleading procedures and occasionally erroneous statements, either by commission or omission. It follows, therefore, that principles of equity strongly dictate against the plaintiff, who is seeking to take advantage of a situation attained by the use of questionable methods.

On December 13, 1971, plaintiff filed a notice of appeal (Appeal No. 72–1065), seeking review of the district court's order, issued on November 26, 1971, which denied reargument of plaintiff's motions. Though the November 26, 1971, order is captioned as a motion to reconsider appellant's motion to require joinder and the motion to substitute party plaintiff, when the proper caption should include the motion to substitute and the motion to reopen bankruptcy, the confusing composition of appellant's October 6, 1971, letter to the district court allows us to appreciate how the

district court could have made such a mistake in nomenclature.

■ Regardless of the caption, however, we are of the opinion that plaintiff is seeking circuitously a reargument on the merits of the September 13, 1971, per curiam decision (Appeal No. 71–1027) by this Court, and that any such attempt to reargue this motion is made untimely. Rule 40(a) of the Federal Rules of Appellate Procedure. Furthermore, plaintiff cannot obtain unpropitiously review of this Court's per curiam opinion (Appeal No. 71–1027) by appealing from the district court's unappealable order denying reargument. Pfister v. Northern Illinois Finance Corp., 317 U.S. 144, 149–150, 63 S.Ct. 133, 137–138, 87 L.Ed. 146 (1942); Sobel v. Diatz, 88 U.S.App.D.C. 329, 189 F.2d 26 (1951). *See also*, Taylor v. Washington Terminal Co., 133 U.S.App.D.C. 110, 409 F.2d 145 (1969).

Based on the foregoing reasons of fact and law, appellee Shell Oil Company's motion to dismiss the appeal at bar is well taken and, accordingly, is hereby granted.

Dismissed.

GODBOLD, Circuit Judge (dissenting):

With deference to Judge Gordon's painstaking analysis, I take a different and much simpler—perhaps simplistic—view of the case. Certainly we are not compelled to dismiss this appeal, and I would not do so but rather would go to the merits.

It is clear to all that Burkett sought by a series of motions that a cause of action against Shell should be asserted by whoever is the correct party plaintiff —by himself without the trustee in bankruptcy as a party, by himself with the trustee joined, by himself suing for the use of the trustee, or by the trustee alone with the bankruptcy estate reopened. The panel in the first appeal only considered the question of whether Burkett individually had standing to assert the cause, acting under the impression that it was yet to be determined at the district court level whether the trustee or someone else on behalf of the bankrupt estate had standing and should pursue the claim. Had the panel not been under a misapprehension it might have ordered the record updated, all aspects of the matter consolidated, and then settled in one appeal the issue of who, if anyone, should assert the cause of action. Rather than simply affirming it might also have remanded to the District Court for further consideration of who, if anyone, would be a proper plaintiff. Or by dictum or supervisory order it could have given some guidance to the District Court to be employed by it upon reconsideration of the motions. In short, it could have entered such orders as justice might require, bearing in mind that the most likely beneficiaries of any recovery on plaintiff's cause of action would be the creditors of the bankrupt estate.

But because of the misunderstanding at the appellate level, and the subsequent response by the District Court (which was not a reconsideration on the merits but a denial on the ground it had already denied the motions), followed by the majority's action on this second appeal, the issues that the first panel thought it need not reach can never have appellate review.

The first panel is not to be faulted. The facts are confusing, the records fragmentary, some of the papers barely legible, and the briefs of little help. The precise history spelled out by Judge Gordon is the result not of what is apparent but of laborious pick and shovel work on his part. The plaintiff is to be faulted, and the majority do that with vigor. They overlook, however, that Shell was chargeable with the same knowledge of the facts as was plaintiff's counsel, and is the beneficiary of an affirmance (on the first appeal) which knocked out Burkett as plaintiff but which contains a recital or predicate that Shell knew to be incorrect. Shell perceived that it had no duty to call to the deciding panel's attention that the

footnote was not accurate. Having failed to speak, it then considered that, while enjoying the benefit of the unconditional affirmance, its silence was neither bar nor hindrance to urging dismissal of the second appeal, thereby removing other possible plaintiffs. I am not willing to say in a one-judge dissenting opinion, and I do not say, that Shell's actions were improper. But I do say that we need not confer upon Shell affirmative benefit from its silence in the face of what it knew to be a judicial misconception of the overall posture of the case.

Perhaps the cause of action should not be asserted at all, or under bankruptcy law cannot now be asserted, or if asserted it may be wholly lacking in merit. But these are matters which ought to be settled by judicial decision, not by mischance. The victims, if there are any, are the creditors in bankruptcy.